**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DR. MICHELLE ALEXANDRE, M.D.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 20 C 6745** |
| | ) | |
| **ILLINOIS DEPARTMENT OF** | ) | **Judge Rebecca R. Pallmeyer** |
| **HEALTHCARE & FAMILY SERVICES** | ) | |
| **and PATRICK CONLON, in his official** | ) | |
| **capacity as Acting Inspector General** | ) | |
| **of the Illinois Department of** | ) | |
| **Healthcare & Family Services,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On January 28, 2020, Plaintiff Dr. Michelle Alexandre received a letter from Defendant Patrick B. Conlon, Acting Inspector General of Defendant Illinois Department of Healthcare & Family Services, informing her that a preliminary audit of her Medicaid billing suggested a potential for fraud. For that reason, the Department would be withholding all of her Medicaid payments until the issues were resolved, for a maximum of three years. Despite Plaintiff's inquiries, the Department has provided Plaintiff with little additional information about what irregularities the preliminary audit revealed, and it has continued to withhold her Medicaid payments. On November 13, 2020, Dr. Alexandre filed this lawsuit [1] against Defendant Conlon and Defendant Illinois Department of Healthcare & Family Services. Dr. Alexandre claims violation of her rights under the Due Process clause of the Fourteenth Amendment, enforced via 42 U.S.C. § 1983 and the doctrine of *Ex parte Young*. Defendants move to dismiss [8] for failure to state a claim. As explained here, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Dr. Michelle Alexandre ("Alexandre") is a physician engaged in family practice in Melrose Park, Illinois. (Compl. [1] ¶¶ 5, 45.) As part of her practice, Alexandre provides care to

persons in various low-income communities in the greater Chicago area.  (*Id.*)  Alexandre has "participated in" public healthcare programs for the last twenty years or so and is currently authorized to provide healthcare through the Illinois Medical Assistance Program—Illinois's Medicaid service.  (*Id.* ¶¶ 5–6.)  On January 28, 2020, Dr. Alexandre received a letter from Defendant Patrick B. Conlon, the Interim Inspector General of Defendant Illinois Department of Healthcare & Family Services ("HFS").  (*Id.* ¶¶ 6–7, 29.)  Conlon's letter informed Dr. Alexandre that HFS would temporarily withhold Medicaid payments from her because "[a] preliminary audit and review of your company's business practices suggests various billing irregularities arising out of the medical services you provided."  (Ex. A to Compl. [1-1] (hereinafter "Jan. 28, 2020 Letter"), at 1.)  The letter informed Alexandre that, under 305 ILCS § 5/12-4.25(K) and 89 Ill. Adm. Code § 140.44, HFS had the authority to withhold such payments for up to three years unless HFS determined sooner that there was "insufficient evidence of fraud or willful misrepresentation or if legal proceedings are completed."   (*Id.*)  Finally, the letter informed Alexandre of her rights to "submit written evidence for reconsideration of the withholding of payments" and to request "full or partial release of withheld payments." (*Id.* at 2.)  The letter provided no details explaining the nature of the reported "billing irregularities."  (*Id.* at 1–2.)

Alexandre alleges that she "made oral inquiries" through counsel, seeking more specific information from HFS, but those requests were denied.  (Compl. ¶ 33.)   On February 21, 2020, Alexandre's attorney sent HFS a letter requesting additional information that would allow Alexandre to respond to HFS's allegations.  (*Id.* ¶ 34; Ex. B to Compl. [1-2] (hereinafter "Feb. 21, 2020 Letter").)  Counsel's letter acknowledged that Dr. Alexandre was aware of one episode that might have drawn the Department's attention:  Between August 18, 2018 and September 6, 2018, the Illinois Department of Financial and Professional Regulation ("IDFPR") had suspended Dr. Alexandre's medical license due to an issue relating to her personal income tax filings.  (Feb. 21, 2020 Letter at 1.)  During that time, Alexandre contracted with another physician, Dr. Otto Garcia, to provide care for her patients, including patients enrolled in Medicare and Medicaid.  (*Id.*)  Dr.

Alexandre told her third-party billing service that she was not providing care during this time, but the billing service continued to submit reimbursement claims under Dr. Alexandre's billing identification numbers. (*Id.*) Upon learning of this error, Dr. Alexandre terminated her contract with the billing service and directed her new service provider to submit amended claims using Dr. Garcia's identification numbers. (*Id.*) Ten of the erroneous claims had been submitted to Medicare for payment, however, leading the Center for Medicare & Medicaid Services ("CMS") to revoke Dr. Alexandre's Medicare enrollment for three years based on CMS's conclusion that the "incident reflected a 'pattern or practice of submitting claims that fail to meet Medicare requirements.'" (*Id.*) Ultimately, an ALJ reviewed that decision *de novo* and overturned CMS's decision, holding that Dr. Alexandre's circumstances did not justify such a revocation. (*Id.* at 2.) Alexandre's attorney recounted these events to HFS but noted that "[w]ithout more information, it is impossible to speculate what other issues might have arisen" surrounding the "billing irregularities" that HFS identified. (*Id.*)

On August 28, 2020, Defendant Conlon's office responded with another letter on behalf of the Office of Inspector General. (Ex. C to Compl. [1-3] (hereinafter "Aug. 28, 2020 Letter").) In that letter, Conlon explained that Alexandre's case "is still active and under investigation," and that the inspector general's office had "received a 42 C.F.R. 455.23(d)(3)(ii) certification from the Illinois State Police Medicaid Fraud Control Bureau (ISP-MFCU)" regarding Alexandre's case— that is, a certification, issued quarterly, that a matter continues to be under investigation and that continuation of the corresponding suspension is warranted. (*Id.* at 2; 42 C.F.R. § 455.23(d)(3)(ii).) Conlon informed Alexandre that her requests for a hearing, reconsideration, and lifting of the Illinois Medicaid Payment suspension were denied, and such a suspension would remain in place until the ISP-MFCU had completed its investigation. (Aug. 28, 2020 Letter at 2.) The letter did not outline any procedure for appealing this denial.

Finally, on October 23, 2020, Alexandre's counsel sent another letter to the HFS Office of the Inspector General.[1]  (Ex. D to Compl. [1-4] (hereinafter "Oct. 23, 2020 Letter").)  This letter again requested a hearing and noted that Dr. Alexandre had not yet received any explanation for HFS's withholding her Medicaid payments.  (*Id.* at 1.)  The letter also noted that "Dr. Alexandre practices in an underserved community that suffers from a lack of medical professionals and losing her as a source of medical care would be detrimental to that community."  (*Id.* at 3.)  Dr. Alexandre's practice is located in Melrose Park, Illinois, an area which, according to the letter, the United States Health Resources & Services Administration has designated as containing a "medically underserved population."  (*Id.* at 3 n.1.)  On November 13, 2020, Alexandre filed suit against both HFS and Conlon in his official capacity as Acting Inspector General of HFS.  (Compl. at 1.)  As of the time of suit, HFS had not responded to Dr. Alexandre's October 23, 2020 letter. (Compl. ¶¶ 37–38.)

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging Plaintiff failed to state a claim on which relief can be granted.  (Mot. to Dismiss [8].)  After all parties briefed that motion, the court requested that Defendants furnish Plaintiff with information concerning the current status of the HFS investigation.  Defendant responded with an email stating simply that "the investigation remains actively ongoing and pertains to a variety of fraud allegations, including allegations of receiving kickbacks and administering expired vaccines." (Aug. 27, 2021 Email from Def.'s Counsel to Pl.'s Counsel [21] at 1.)

## DISCUSSION

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A Rule 12(b)(6) motion to dismiss "challenges

---

[1]      By this time, Dr. Alexandre had hired new counsel.  The February 21, 2020 letter had been sent by Patrick M. Callahan, an attorney at the Law Office of Joseph J. Bogdan (Feb. 21, 2020 Letter at 2), while the October 23, 2020 Letter was sent by Barry A. Spevack at Monico & Spevack LLC, the firm that continues to represent Dr. Alexandre in defending this motion. (Oct. 23, 2020 Letter at 3.)

the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (citation omitted). While "detailed factual allegations are unnecessary, the complaint must have 'enough facts to state a claim to relief that is plausible on its face.'" *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That task is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In deciding a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019).

Defendant's motion to dismiss states that neither the federal Medicaid statute or regulation provide for a private right of action; that the Eleventh Amendment bars claims against both the Illinois Department of Healthcare and Family Services and Inspector General Patrick Conlon in his official capacity; and that Plaintiff fails to allege a Fourteenth Amendment due process claim. (Mot. to Dismiss at 1.) Given the interrelation of Defendants' arguments, the court considers them together.

## A. Eleventh Amendment

It is well-established that "[t]he Eleventh Amendment bars most claims in federal court against a state that does not consent to the suit." *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018) (collecting cases). For these purposes, state agencies enjoy the same immunity as states themselves. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991) ("Indeed, a state agency *is* the state for purposes of the eleventh amendment."). Unlike state agencies, however, state officials can face suit without consent in certain situations. Indeed, "under the *Ex parte Young* doctrine, a plaintiff may file suit against state officials seeking prospective equitable relief for ongoing violations of federal law." *Peirick v. Ind. Univ.-Purdue*

*Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007) (internal quotations omitted). A plaintiff suing the relevant state official in her official capacity cannot, however, seek retroactive monetary relief. *McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1050 (7th Cir. 2013) (noting that courts may not "direct a state to make payments to resolve a private debt or remedy a past injury to a private party").

In this case, Alexandre sues both the Illinois Department of Healthcare and Family Services ("HFS") and Conlon in his official capacity as Acting Inspector General of that agency. (Compl. ¶¶ 6–7.) Given that HFS is an Illinois state agency, there is no question—and Alexandre does not dispute—that all claims against HFS must be dismissed as barred by the Eleventh Amendment. The official capacity suit against Conlon raises a somewhat more complicated question. Alexandre still cannot seek an order requiring the State to pay her for claims she has already submitted, as this would amount to retroactive monetary relief forbidden under the Eleventh Amendment. *See Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882–83 (7th Cir. 2012) ("[W]here a plaintiff's request for relief would have an effect upon the state treasury that is not merely ancillary but is the essence of the relief sought, it is barred by the Eleventh Amendment." (internal quotations omitted)); *see also Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 256–57 (2011) ("*Ex parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury . . . .").

The court can, however, consider Alexandre's request for injunctive relief in the form of a hearing as to the basis for withholding her funds or for more specific information on why her funds are being withheld. "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Amundson ex rel. Amundson v. Wis. Dep't of Health Servs.*, 721 F.3d 871, 873 (7th Cir. 2013) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). A request for more process in review of a decision which harmed a plaintiff is properly

characterized as prospective injunctive relief. For example, in *Holton v. Ind. Horse Racing Comm'n*, the Seventh Circuit reviewed a decision in which the district court had ruled that the Eleventh Amendment barred plaintiff's request that the Indiana Horse Racing Commission review an administrative decision that had caused plaintiff to lose $6,250. 398 F.3d 928, 929 (7th Cir. 2005). The Seventh Circuit vacated the decision, holding that "[t]he relief that [plaintiff] requests— an order directing the Commission to review the . . . decision in order to meet a constitutional requirement—is a kind of prospective equitable remedy compatible with state sovereign immunity under *Young*." *Id.* The court explained that the plaintiff "would encounter a problem had he asked the court to direct the Commission to *reverse* the stewards' decision and pay him $6,250 . . . but a request for review differs from a request for damages." *Id.* Thus, the court dismisses HFS as a defendant in this suit and considers below only those claims for prospective relief brought against Conlon in his official capacity as Acting Inspector General of HFS.

## B. Violation of Due Process

The court first examines Dr. Alexandre's § 1983 claim alleging Defendant Conlon violated her right to Due Process under the Fourteenth Amendment to the Constitution by suspending her Medicaid payments for up to three years without providing a hearing or detailing the particular "billing irregularities" supporting that suspension. Section 1983 provides for a federal cause of action against any person who, under color of state law, subjects a citizen of the United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983. Defendants argue that Conlon, acting in his official capacity, is not a "person" subject to suit under § 1983. (Mem. in Support of Mot. to Dismiss [9] at 6 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).) But Defendants neglect to note the Supreme Court's clarification that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the state.'" *Will*, 491 U.S. at 71 n.10 (citing *inter alia Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Thus, because Dr. Alexandre's request for additional

7

information is properly characterized as injunctive relief, Conlon is a "person" subject to suit under § 1983.

The Due Process clause of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty or property without due process of law." Typically, such protections entail "prior notice and a meaningful opportunity to be heard." *Lavite v. Dunstan*, 932 F.3d 1020, 1032 (7th Cir. 2019) (citing *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)). But "[p]rocedural due process does not protect every conceivable legal interest." *Manley v. Law*, 889 F.3d 885, 890 (7th Cir. 2018). Rather, "[t]o establish a due process violation, a plaintiff must actually have been deprived of a liberty or property interest entitled to constitutional protection." *Lavite*, 932 F.3d at 1032 (citing *Paul v. Davis*, 424 U.S. 693, 710-11 (1976)). Put another way, "in any due process case where the deprivation of property is alleged, the threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011).

To qualify, a party must "have a legitimate claim of entitlement" to the claimed interest, and that "entitlement must be established by statutes or regulations that delimit the scope and condition of the right." *Bryn Mawr Care v. Sebelius*, 898 F. Supp. 2d 1009, 1013 (N.D. Ill. 2012) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Indeed, property interests "are not created by the Constitution . . . [t]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Hussey v. Milwaukee Cnty.*, 740 F.3d 1139, 1142 (7th Cir. 2014) (internal quotations omitted). "Accordingly, federal property interests under the 14th Amendment usually arise from rights created by state statutes, state or municipal regulations or ordinances, and contracts with public entities." *Bell v. City of Country Club Hills*, 841 F.3d 713, 717 (7th Cir. 2016) (internal citations omitted).

1.    **The relevant law**

As a basis for her purported property interest, Dr. Alexandre directs the court's attention to 42 U.S.C. § 1396a(37); 42 C.F.R. § 455.23; 89 Ill. Adm. Code § 140.44; and 305 ILCS § 5/12-4.25.  The court thus looks to each of these statutes and regulations to determine whether due process rights are triggered by the type of "temporary" suspension of Medicaid benefits that HFS imposed here.

The federal statute, 42 U.S.C. § 1396a(37), requires that a state "provide for procedures of prepayment and postpayment claims review, including review . . . to ensure the proper and efficient payment of claims and management of the program."  Of more immediate relevance to this case is an implementing regulation, 42 C.F.R. § 455.23, which deals with "[s]uspension of payments in cases of fraud."  It explains that "[t]he State Medicaid agency must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program against an individual or entity unless the agency has good cause to not suspend payments or to suspend payment only in part."  *Id.* § 455.23(a)(1).  "Allegations are considered to be credible when they have indicia of reliability and the State Medicaid agency has reviewed all allegations, facts, and evidence carefully and acts judiciously on a case-by-case basis."  *Id.* § 455.2(3).  The state agency "may suspend payments without first notifying the provider," and a provider "may request, and must be granted, administrative review where State law so requires."  *Id.* § 455.23(a)(2)–(3).

After a state agency imposes a suspension, it must send notice to the provider, which must include, among other things, "the general allegations" surrounding the suspension, notice of "the right to submit written evidence for consideration" by the state agency, and notice of "the applicable State administrative appeals process and corresponding citations to State law."  *Id.* § 455.23(b).  The notice "need not disclose any specific information concerning an ongoing investigation."  *Id.*  The regulation requires that a suspension be "temporary" but does not define that term other than to say that it cannot continue after the agency "determines there is insufficient

evidence of fraud" or after legal proceedings related to the alleged fraud are completed. *Id.* § 455.23(c)(1). State agencies also must meet various documentation and record-keeping requirements surrounding suspensions. *Id.* § 455.23(g). Finally, the regulation gives the State discretion to find that "good cause exists" to either not suspend payments or suspend them only in part in a number of circumstances, including where the provider in question "serves a large number of beneficiaries within a HRSA-designated medically underserved area." *Id.* § 455.23(e)–(f).

The corresponding Illinois statute is 305 ILCS § 5/12-4.25. To begin, the parties debate which subsection ought to apply here: § 5/12-4.25(K) or § 5/12-4.25(K-5). The distinction is an important one because subsection (K-5) guarantees a party facing suspension of Medicaid fees a right to request *both* a hearing *and* a reconsideration of payment withholding, whereas subsection (K) guarantees only a right to request a reconsideration of payment withholding. *Compare id.* § 5/12-4.25(K-5), *with* § 5/12-4.25(K). Defendants argue that subsection (K) applies because the January 28, 2020 letter from Conlon indicates that HFS suspended Plaintiff's payments pursuant to subsection (K), *not* pursuant to (K-5). (MTD at 9–10 (citing Jan. 28, 2020 Letter at 1).) Plaintiff counters that both sections are equally applicable to her case, that the difference between the two subsections is "befuddling," and that it is "hard to justify why [HFS] can simply choose which tangent to offer . . . when it comes to withholding a provider's payments." (Pl.'s Resp. at 10.)

What Plaintiff fails to acknowledge, however, is that HFS is not merely electing to use the subsection that offers less process; subsections (K) and (K-5) apply to different situations. Subsection (K) allows for withholding of a provider's Medicaid payments "where there is credible evidence [of fraud], received from State or federal law enforcement or federal oversight agencies or from the results of a preliminary Department audit." Subsection (K-5), on the other hand, applies where there is a "credible allegation of fraud" from a source such as "fraud hotline complaints, claims data mining, [or] patterns identified through provider audits . . . ." Thus, HFS's

reliance on subsection (K) is warranted due to the fact that the source of suspicion in this case arose "from State or federal law enforcement or federal oversight agencies." 305 ILCS § 5/12-4.25(K). This explanation is consistent with Dr. Alexandre's own letter in which she noted that CMS had previously suspected and prosecuted her based on submission of suspicious claims (Feb. 21, 2020 Letter at 1–2), which could have been the "credible evidence" of fraud that led to Dr. Alexandre's suspension.

For that reason, the court examines subsection (K) rather than (K-5). As noted above, 305 ILCS § 5/12-4.25(K) provides that HFS "may withhold payments, in whole or in part, to a provider . . . where there is credible evidence, received from State or federal law enforcement or federal oversight agencies or from the results of a preliminary Department audit, that the circumstances . . . may involve fraud . . . under the Illinois Medical Assistance program." HFS has defined credible evidence as "evidence that reasonable people would agree as being trustworthy and reliable." 89 Ill. Adm. Code § 140.13. Beyond that, subsection (K) resembles 42 C.F.R. § 455.23 in many ways. It does not require HFS to notify the provider before withholding payments, it requires sending notice to the provider within five days of withholding setting out the general allegations but not specific information about the investigation, and—most important in determining whether a property right exists in this case—it requires that all withholdings be temporary, not to continue after HFS determines there is insufficient evidence of fraud or after legal proceedings relating to the claim are completed. 305 ILCS § 5/12-4.25(K)(a)–(b). Notably, subsection (K) includes three provisions that the federal rule does not: (1) a provider "may request a reconsideration of payment withholding, and [HFS] must grant such a request"; (2) HFS "shall state by rule a process and criteria by which a provider . . . may request full or partial release of payments withheld under this subsection," and the provider may make such a request at any time; and—again, of highest relevance to this case—(3) for a withholding of payment to be "temporary," it cannot exceed a period of three years. *Id.*

The parties also cite and discuss certain Illinois regulations that further elaborate on the process and criteria by which providers may request release of withheld funds.[2]  However, as discussed below, the legal criterion most relevant to Dr. Alexandre's claimed property right is the Illinois statute's requirement that withholding of payments be "temporary."  Thus, the court focuses its attention there.

### 2.     Dr. Alexandre's property interest

To begin, it is important to define the "property interest" that Dr. Alexandre claims in this case.  The caselaw is relatively clear that providers such as Dr. Alexandre do not have a Fourteenth Amendment property interest in *continued participation* in federally funded healthcare programs.  The Fifth Circuit recently addressed this question in *Shah v. Azar*, 920 F.3d 987 (5th Cir. 2019), where it affirmed the lower court's decision to uphold administrative revocation of plaintiff physicians' Medicare privileges.  *Id.* at 989.  In doing so, the Fifth Circuit rejected plaintiffs' argument that they had a property right in their status as Medicare providers, holding that "[w]e

---

[2]     In particular, 89 Ill. Adm. Code § 140.44 addresses funds withheld pursuant to section 12-4.25(K) discussed above.  *See* 89 Ill. Adm. Code § 140.44(b)(1).  It adds three material provisions to subsection (K).  First, it explains that withheld payments may be released "at the discretion of the Inspector General of the Department, when it is in the best interest of the recipients of medical assistance."  *Id.* § 140.44(e).  Second, it notes that a provider's request for release of withheld payments "must be in writing," supported by reasons or by documents that defeat a claim of fraud, and sent to the Office of Inspector General by mail or email.  *Id.* § 140.44(d).  And third, the regulation explains that, if HFS commences an administrative proceeding seeking to terminate the provider, then "withholding will continue in conformance with 89 Ill. Adm. Code § 104.272."  *Id.* § 140.44(c)(2).  In such circumstances, a provider may request release of funds in the same way, but the referenced section, 89 Ill. Adm. Code § 104.272, goes on to say that such requests "may be granted, at the discretion of the Inspector General" based on the following four factors: (1) whether HFS has proceeded in a timely manner, (2) whether release is "in the best interests of [Medicaid] recipients," (3) whether release would *not* be detrimental to either Medicaid recipients or HFS, and (4) whether the provider herself has caused delays in proceeding in a timely manner.  *Id.* § 104.272(c).  The Inspector General must also notify the provider in writing once he has decided whether to grant the request for release.  *Id.* § 104.272(d).  While certainly related to the general process of Medicaid withholding, these regulations are not directly relevant to the Fourteenth Amendment issue before the court: Here, the Inspector General is not exercising his discretion to release withheld payments; Dr. Alexandre is not submitting a written request to release withheld payments (she is more precisely seeking to vindicate her due process rights); and HFS is not seeking to terminate Dr. Alexandre as a Medicaid provider.

agree with our four other sister circuits that have determined participation in the federal Medicare reimbursement program is not a property interest." *Id.* at 998 (citing *Parrino v. Price*, 869 F.3d 392, 397–98 (6th Cir. 2017) (collecting cases)).[3]  The Fifth Circuit explained that "[b]ecause health care providers are not the intended beneficiaries of the federal health care programs . . . they therefore do not have a property interest in continued participation . . . ."  *Shah v. Azar*, 920 F.3d at 997–98.  While the Seventh Circuit has not addressed this issue head-on, it has suggested, in dicta, that it not only agrees with its sister circuits on this issue, but also specifically would extend this ruling to *Medicaid* providers, as well.  *Grason v. State of Ill. Inspector Gen.*, 559 F. App'x 573, 574 (7th Cir. 2014) ("[I]t is doubtful that current Medicaid providers even have a protected interest in continuing in the program." (citing *Guzman v. Shewry*, 552 F.3d 941, 953 (9th Cir. 2009); *Geriatrics, Inc. v. Harris*, 640 F.2d 262, 264–65 (10th Cir. 1981)).  Thus, Dr. Alexandre cannot establish that she has a property interest in remaining a provider within the Medicaid program.[4]

---

[3]      Although the *Shah* court referred to the "four other sister circuits" that have so held (referring to the Sixth, Ninth, Tenth, and First Circuits), that number is actually (at least) five; the Second Circuit reached the same conclusion in *Senape v. Constantino*, 936 F.2d 687, 690–91 (2d Cir. 1991) (rejecting plaintiff's assertion that a provider has "a property right in his continued enrollment in the Medicaid program").  The only circuit that has come out the other way on this issue was the Fourth Circuit in *Ram v. Heckler*, 792 F.2d 444, 447 (4th Cir. 1986) (holding that a physician's "expectation of continued participation in the [M]edicare program is a property interest protected by the due process clause of the fifth amendment").  The Fifth Circuit, Sixth Circuit, and Ninth Circuit all acknowledged, and explicitly rejected, *Ram*'s conclusion when they instead concluded that no such property interest exists.  *Parrino*, 869 F.3d at 398 ("And though the Fourth Circuit has declared that providers do have a property interest in continued participation in federal health care programs, it provided no accompanying analysis for its conclusion."); *Erickson v. U.S. ex rel. Dep't of Health & Human Servs.*, 67 F.3d 858, 862 (9th Cir. 1995) ("We do not find Ram to be persuasive authority for plaintiffs' position.  In contrast, the First and Tenth Circuits have provided reasoned analyses for their conclusion that physicians do not have a property interest in continued participation in Medicare."); *Shah*, 920 F.3d at 998 n.30 (holding no such property interest exists despite acknowledging that "the Fourth Circuit has reached a contrary conclusion").

[4]      This line of cases lies contrary to Judge Kocoras's finding in *MEDCARE HMO v. Bradley*, 788 F. Supp. 1460 (N.D. Ill. 1992).  There, after examining 305 ILCS § 5/12-4.25(A), the court granted plaintiff health maintenance organization's request for a permanent injunction based on plaintiff's claim that it had experienced a due process violation when the then-Illinois Department of Public Aid ("IDPA") cancelled a contract under which plaintiff had provided Medicaid services to recipients.  *MEDCARE HMO*, F. Supp. at 1462, 1473.  *MEDCARE*, however,

Dr. Alexandre may, however, have a property interest in Medicaid claims she submits to HFS. For this premise, Dr. Alexandre cites *Bader v. Wernert*, where the Northern District of Indiana faced a motion for preliminary injunction from plaintiff providers seeking to enjoin the Indiana Family and Social Services Administration ("FSSA") from "continuing to block all payments owed to Providers for claims submitted" due to plaintiffs' placement in the state's "Medicaid Prepayment Review Program." 178 F. Supp. 3d 703, 709–10 (N.D. Ind. 2016). Plaintiff providers in that case "concede[d] that they have no property interest in remaining part of the state Medicaid program," but argued that they had a right to due process in any claims submitted to the FSSA. *Id.* at 734. The *Bader* court agreed with plaintiffs, noting that "Indiana [state court] cases . . . generally recognize that a provider's submitted claims may not be denied without due process." *Id. Bader*, however, is not precisely analogous to this case. The plaintiff in *Bader* was not facing a suspension of payments due to suspected fraud; rather the plaintiff there challenged Indiana's "prepayment review" process in which the State closely monitors the claims submitted by a particular provider whom they suspect of fraudulent activity but ultimately approves payments that pass this prepayment review. *Id.* at 735–36. Indeed, the *Bader* court noted that, unlike a plaintiff facing suspension of all Medicaid payments pending an investigation of fraud, the providers in *Bader* had, in a given four-month period, still received payment on 67 percent of their claims. *Id.* at 735.

The question before the court today is thus a slightly different one: whether procedural due process rights are infringed by the State's temporary suspension of Medicaid payments pending an investigation into suspected fraud. On this question, the most comprehensive account of the relevant caselaw comes from the Central District of California's ruling in *Maynard v. Bonta*, CV 02-06539 MMM (CTx), 2003 U.S. Dist. LEXIS 16201 (C.D. Cal. Aug. 29, 2003). There, plaintiff

---

was decided at the level of the district court in 1992, before most of the circuit courts had coalesced around the opposite holding: that providers have no protectible property interest in continued participation in Medicare and Medicaid.

doctor sued the California Department of Health Services for withholding his Medicaid payments, alleging deprivation of procedural due process under 42 C.F.R. § 455.23 and relevant California Medicaid law. *Id.* at *1–2. The *Maynard* court found that a plaintiff had a limited property interest in Medicaid payments withheld pending a fraud investigation in some instances but not others. In particular, the court noted that "courts have generally held that a plaintiff is not 'entitled' to Medicaid funds that are the subject of a pending investigation" and therefore, plaintiffs have no protected property interest in those funds. *Id.* at *53–55 (collecting cases). But "[w]hile holding generally that a provider has no property interest in Medicaid funds that are withheld pending an investigation of alleged fraud or illegality, federal courts have stated that the government may not deprive a provider of such funds indefinitely without a hearing." *Id.* at *57 (collecting cases). In sum, the *Maynard* court concluded that "where the governing statutes and regulations provide that withholding may be 'temporary' only, a provider can 'regain' his property interest in the withheld funds if the investigation continues indefinitely." *Id.* at *59.

With this rule in mind, the *Maynard* court found that the plaintiff, in that instance, had regained his property interest in the withheld Medicaid funds in question. The court found it important that the withholding there, which had since come to an end, had lasted almost two years and ended only after plaintiff brought a mandamus action under which the state court ordered the State to complete its investigation within a specified period. *Id.* at *61. The *Maynard* court noted, at the motion to dismiss stage, that it "cannot find as a matter of law that a two-year investigation is 'temporary' in duration." *Id.* at *60. In particular, there existed a "question of fact as to whether such a long investigation was permissible given the language of the statute and regulations, and whether, if it was not, Dr. Maynard reacquired a property interest in the withheld funds because State [health agency] acted outside the parameters imposed upon it." *Id.*

Here, there is some question as to whether Dr. Alexandre has similarly reacquired a property interest in withheld Medicaid funds under the *Maynard* court's test. The California statutes in question in *Maynard*, like the Illinois laws at issue today, allowed for "temporary"

15

suspension of any Medicaid provider "[u]pon receipt of a credible allegation of fraud."  Cal. Welf. & Inst. Code § 14107.11(a).  Unlike the Illinois laws at issue today, however, section 14107.11(a) of the California Welfare & Institutions Code does set a maximum limit on the time during which payments may be withheld.  The *Maynard* court determined that a reasonable jury could find that a two-year suspension was not temporary in duration and that, therefore, plaintiff had regained a property interest in the withheld funds.  The *Maynard* court takes as a given that whether a plaintiff has regained her property interest in withheld Medicaid funds depends upon whether the "State [health agency has] acted outside the parameters imposed upon it" by state law.  Here, the Illinois statute in question imposes more exact parameters than the California laws in *Maynard*:  In Illinois, a withholding cannot extend beyond "a period of 3 years."  305 ILCS § 5/12-4.25(K)(b)(3).  Illinois HFS has not yet withheld funds beyond this time parameter, as Dr. Alexandre's suspension began on or around January 28, 2020.  (Jan. 28, 2020 Letter at 1.)

The question then becomes whether Dr. Alexandre's suspension can be considered to have crossed the line from "temporary" to "indefinite," notwithstanding the provision of Illinois code stating that three years is the maximum allowable time to withhold payments.  Property rights are created and defined by the laws that describe them.  *Hussey*, 740 F.3d at 1142 ("Property interests, of course, are not created by the Constitution . . . [T]hey are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . .").  The court does not read Illinois law as establishing a presumption that a suspension is temporary in any case so long as it does not exceed three years.  Both the statute and regulation state that all withholding of payment actions "shall be temporary *and* shall not continue after . . . [t]he withholding of payments for a period of 3 years."  89 Ill. Adm. Code § 140.44(c) (emphasis added); 305 ILCS § 5/12-4.25(K)(b) (emphasis added).  Given the presence of the word "and," that language is naturally read to impose two separate time requirements:  temporariness and a maximum of three years.  In other words, rather than suggesting that every suspension under three years is temporary, the statute suggests that a

suspension must be concluded within a reasonably temporary time not to exceed three years. More broadly, even if the Illinois statute and regulation did imply that any suspension for less than three years can be classified as "temporary," a State is not free to set the line between "temporary" and "indefinite" wherever it wishes. Both Illinois law and federal law guarantee that a suspension on the basis of suspected fraud be "temporary." *See* 42 C.F.R. § 455.23(c). Certainly, if Illinois law had stated that a temporary suspension must not extend beyond 100 years, such a definition would not comply with reasonable interpretations of the federal "temporariness" requirement, and a plaintiff's procedural due process rights would still kick in sometime within the first century of her suspension. Thus, the court rules today that a reasonable factfinder could find that Dr. Alexandre's suspension—which began over a year and a half ago—has crossed the line from "temporary" to "indefinite" and that Dr. Alexandre has thus regained her property interest in withheld Medicaid funds.

Defendants have provided no caselaw suggesting that a Medicaid suspension is categorically considered temporary in Illinois so long as it has lasted less than three years; nor have Defendants provided any caselaw suggesting a plaintiff has no procedural due process rights so long as the suspension lies within the time period set out in a state's Medicaid statute. The only case that Defendants cite on this issue is *Newman v. United States*, which they cite for the premise that a plaintiff lacks a cognizable property interest in property that she has fraudulently obtained. (Def.'s Mot. at 9 (citing *Newman v. United States*, No. 20 CR 19-1-JPS, 2020 WL 4035552, at *3 (E.D. Wis. July 17, 2020)).) *Newman*, however, stands for no such thing. There, the Eastern District of Wisconsin held that, for the purposes of the Fourth Amendment, criminal defendants "do not have a reasonable expectation of privacy in property that they fraudulently obtain." *Newman*, 2020 WL 4035552, at *3. Moreover, even if *Newman* did stand for the premise Defendants cite it for, Dr. Alexandre in no way concedes that the Medicaid payments at issue *were* fraudulently obtained. Thus, that case is immaterial to today's decision.

Plaintiff acknowledges that there are at least two cases in which courts found that there was not a Fourteenth Amendment property interest in Medicaid funds. In *Pers. Care Prods. v. Hawkins,* the Fifth Circuit held that "[n]othing in Texas or federal law extends a property right in Medicaid reimbursements to a provider that is the subject of a fraud investigation." 635 F.3d 155, 159 (5th Cir. 2011). The court there, however, was not concerned with the question of when a suspension of payments has become "indefinite" rather than "temporary." Instead, the question in that case was whether—when Medicaid reimbursements are properly suspended as under investigation—Texas regulations allow for suspension of payments for *future* claims along with withholding past claims that are under investigation. *Id.* In answer to that question, the court held that "[t]he statutory scheme does not give PCP a property interest in its present reimbursement claims while past claims are under investigation for fraud." *Id.* In so holding, the Fifth Circuit noted that "[the state agency], however, may not withhold payment indefinitely without some findings as to unacceptable practices." *Id.* at 159 n.20 (quoting *Yorktown Med. Lab. v. Perales*, 948 F.2d 84, 89 (2d Cir.1991)). *Pers. Care Prods.* is thus consistent with the court's ruling today.

Plaintiff also briefly cites to *New Vision Photography Program, Inc. v. District of Columbia*, where the court found that "[p]roviders have no property interest in Medicaid payments." 54 F. Supp. 3d 12, 30 (D.D.C. 2014) (citing *ABA, Inc. v. District of Columbia*, 40 F. Supp. 3d 153, 167 (D.D.C. 2014); *Guzman*, 552 F.3d at 950; *Border Area Mental Health Servs., Inc. v. Squier*, No. 13-CV-00613 MCA/WPL, 2013 WL 12140453, at *4 (D.N.M. July 25, 2013)). Such a broad statement, however, is contrary to the holdings of *Bader* and *Maynard* cited above, and in any event does not appear to be direclty supported by the three cases that the *New Vision* court cited for this premise. In *ABA, Inc.*, the District of Columbia District Court was careful to note that "[a]ll Circuits that have addressed the issue have determined that a *temporary* suspension of Medicare or Medicaid payments does not implicate due process and that no pre-suspension hearing is required." *ABA, Inc.*, 40 F. Supp. 3d at 167 (D.D.C. 2014). The *ABA, Inc.* court said nothing

about whether a property interest exists in an indefinite suspension. Likewise, the District of New Mexico in *Border Area* explicitly noted that Plaintiffs *do* "have a property interest in payment for services delivered to Medicaid recipients"; the court merely qualified that right by explaining that "the terms of Plaintiffs' provider agreements as well as federal and state law have carved out of that property interest the right to immediate payment while an investigation into credible allegations of fraud are pending." *Border Area Mental Health Servs., Inc.*, 2013 WL 12140453, at *4. The *Border Area* court did not address the question of whether the property interest in payments is triggered again once the State's refusal to pay *immediately* becomes a refusal to pay *indefinitely*. Finally, in *Guzman*, the Ninth Circuit did not even reach the question of whether a plaintiff has a property interest in previously submitted Medicaid claims; the court held only that the plaintiff there "[did] not possess a property interest in continued participation in . . . Medicaid . . . ." 552 F.3d at 954. As noted above, courts have treated this question as distinct from the question of whether plaintiffs have a property interest in their previously submitted Medicaid claims. *See Bader*, 178 F. Supp. 3d at 734 (agreeing with plaintiffs who "concede[d] that they have no property interest in remaining part of the state Medicaid program," but argued that they had a right to due process in any claims submitted to the relevant state agency).

For these reasons, the court rules that a trier of fact could find that, in the year and a half that Dr. Alexandre's Medicaid payments have been suspended, that suspension crossed the line from "temporary" to "indefinite." Hence, Dr. Alexandre has adequately alleged that she has a property interest in withheld payments for which she is owed due process of law.

### 3. What process is due?

The conclusion that Dr. Alexandre has a property interest in withheld Medicaid funds would not, on its own, preclude the court from granting Defendants' motion to dismiss. Once a plaintiff has established that the State has deprived her of a property right, she must then show that the State has not afforded sufficient process to contest that deprivation. Due process is "a flexible concept that varies with the particular situation." *Hamlin v. Vaudenberg*, 95 F.3d 580, 584

(7th Cir. 1996) (internal quotations omitted).  In any particular case, a court must balance three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Bradley v. Vill. of Univ. Park, Illinois*, 929 F.3d 875, 882 (7th Cir. 2019) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Although "[f]or some deprivations due process includes a predeprivation hearing, post-deprivation remedies are a constitutionally acceptable substitute for predeprivation remedies in many procedural due process cases."  *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 939 (7th Cir. 2003) (internal quotations omitted).

The parties here have shed little light on the question of what process is constitutionally required in a case such as this one.  But it is difficult to see how the minimal process Dr. Alexandre has received to date can be considered sufficient.  The January 28, 2020 letter that Dr. Alexandre received from the State told her only that HFS would be temporarily withholding Medicaid payments because a preliminary audit of her business revealed "billing irregularities."  (Jan. 28, 2020 Letter [1-1] at 1.)  The letter stated that the State could withhold all of her reimbursements for "up to three years" so long as the department did not determine before then that there was insufficient evidence of fraud to support the withholding.  (*Id.*)  The letter also informed Dr. Alexandre that she could "submit written evidence for reconsideration of the withholding of payments" and request "full or partial release of withheld payments," but provided her with no information about what the irregularities were or why they had been flagged.  (*Id.* at 1–2.)  In Dr. Alexandre's words, she was left "wrestling with a ghost," because the letter provided no details as to the nature of the identified billing irregularities or why they had been flagged.  (*Id.*)

When Dr. Alexandre wrote to HFS, noting that some irregularities might be explained by a period of time in which her medical license had been suspended due to issues relating to

personal income taxes (Feb. 21, 2020 Letter [1-2] at 1), Defendant Conlon's office responded simply by informing her that her requests for a hearing, reconsideration, and lifting of the suspension were denied, and that the suspension would remain in place until the state agency had completed its investigation. (Aug. 28, 2020 Letter [1-3] at 2.) The letter informed Dr. Alexandre that her case was still under active investigation but did not disclose any details about the purported billing irregularities in question. (*Id.* at 1–2.) The letter also did not outline any process for appealing its decision to deny Dr. Alexandre's requests. (*Id.*)

Defendants' latest email—a one-sentence response to the court's request for more information—hardly changes the landscape. While noting for the first time that the fraud allegations against Dr. Alexandre include "kickbacks" and "administering expired vaccines," Defendants go no further. (Aug. 27, 2021 Email from Def.'s Counsel to Pl.'s Counsel [21] at 1.) That is problematic because, for one thing, this minimal information still leaves open the possibility that Dr. Alexandre was wrongly suspended as a result of clerical errors involving claims submitted under her identification numbers but for work done by someone she contracted with, Dr. Otto Garcia. As noted above, ten claims were erroneously submitted to Medicare using Dr. Alexandre's identification. (Feb. 21, 2020 Letter [1-2] at 1.) Without information from Defendants such as the time period of the newly alleged fraud, it is at least possible that the alleged "kickbacks" and administration of "expired vaccines" occurred during this same period when actions by Dr. Garcia were erroneously attributed to Dr. Alexandre.

Effectively, Defendants are claiming that the State has the right to deprive Dr. Alexandre of the entirety of her Medicaid reimbursements for up to three years without providing her with a hearing on the matter, without providing any substantive information about the purported "billing irregularities" on which the suspension is based, and without informing her of any right to appeal once they denied a request for reconsideration of her suspension. On the facts pleaded, the court holds that the Fourteenth Amendment guarantee of due process requires that Defendants do more.

The court acknowledges that Illinois statutes and regulations may by their terms require less than that required by constitutional due process. Under 305 ILCS § 5/12-4.25(K), (1) HFS can "withhold payments without first notifying the provider," (2) the provider can request a reconsideration of the suspension but is not entitled to a hearing, and (3) the notice that HFS sends the provider must "set forth the general allegations as to the nature of the withholding action but need not disclose any specific information concerning its ongoing investigation." But state action can violate Fourteenth Amendment procedural due process even where it complies with relevant state law. *See Listenbee v. City of Milwaukee*, 976 F.2d 348, 352 (7th Cir. 1992) ("While the legislature may elect not to confer a property interest . . . it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."). Moreover, Defendants may not have met even the minimal requirements of the state statute, to the extent their communications do not "set forth the general allegations" against Dr. Alexandre.

## CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendants' motion to dismiss [8]. The court dismisses with prejudice all claims against Defendant Illinois Department of Healthcare & Family Services based on the agency's sovereign immunity under the Eleventh Amendment. The court denies Defendant's motion to dismiss Plaintiff's § 1983 claim against Defendant Patrick B. Conlon, Acting Inspector General, which alleges a violation of due process under the Fourteenth Amendment, to the extent Plaintiff seeks prospective injunctive relief. Plaintiff's remaining claims are dismissed. The parties are directed to submit a proposed pretrial schedule on or before October 8, 2021.

ENTER:

Dated: September 15, 2021

REBECCA R. PALLMEYER
United States District Judge